UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERRANCE BURNEY HALL,

        Petitioner,                        Case No. 09-13831
                                                              Honorable David M. Lawson

v.

BLAINE LAFLER,

        Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner Terrance Burney Hall, a prisoner in the custody of the Michigan Department of Corrections, has filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging his convictions for first-degree premeditated murder, Mich. Comp. Laws § 750.316(1)(a), felon in possession of a firearm, Mich. Comp. Laws § 750.224f, and possession of a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b. The petitioner raises claims concerning a limitation on the cross-examination of a witness, the effectiveness of trial counsel in investigating his case and not calling witnesses, and the effectiveness of appellate counsel for failing to raise the foregoing issues on direct appeal. The respondent has filed an answer to the petition contending that it should be denied because the claims lack merit and were not preserved properly in state court. The Court finds that the petitioner's claims lack merit and therefore will deny the petition.

I.

The petitioner was found guilty of the crimes following a jury trial in the Wayne County, Michigan circuit court. The petitioner's convictions arise from the shooting death of Chauncey Greene in Detroit, Michigan on November 8, 2004. According to testimony presented at trial, the

petitioner was driving in a vehicle with his friends and carrying an AK-47 assault when he noticed Greene following them. When Greene pulled into his apartment building parking lot, the petitioner and his friends stopped their vehicle as well. The petitioner exited the vehicle armed with the gun, confronted Greene, and shot him several times. The petitioner returned to the car and said that he shot Greene, who later died from his gunshot wounds. The petitioner fled the area but was found in Ontario, Canada and taken into custody on June 13, 2005.

Delorean Henderson, Cedric Smith, and Joseph Turner offered similar testimony as to the events of November 8, 2004. Henderson testified that he, the petitioner's brother Andre Watson, and Watson's girlfriend Kiki were driving Kiki's car near 4535 Cadieux looking for a car to steal. At some point, Henderson and Kiki became separated from Watson, who was chased by people who came from an apartment building. Henderson and Kiki drove away. As they left, shots were fired at their car. Henderson called Turner to tell him that they could not find Watson and that someone was shooting at the car. Henderson and Kiki went to Turner's home and, after speaking to Turner's mother, Henderson walked home. The petitioner, Henderson, Turner, and Cedric Smith gathered to search for Watson. The four got into Smith's car, a green and purple Chevrolet Lumina; the petitioner sat in the front passenger seat. Turner and Henderson testified that the petitioner said "If I can't find my brother, I'm killing you and Kiki." Trial Tr., Sept. 21, 2005 at 233. Henderson, Smith, and Turner all testified that the petitioner had an AK-47 with him in the front seat. They drove to the apartment building at 4535 Cadieux. As they approached, they saw Watson's hat in the street in front of the building and received a call telling them that Watson had safely returned to his grandmother's house. As they were returning home, they were followed by a man in a black truck talking on a cell phone. The truck turned into to a parking lot, and the petitioner told Smith to

follow him. Both cars returned to the apartment building, where the truck parked and Greene exited the vehicle and walked around the corner of the building. The petitioner exited the vehicle and followed Greene around the corner. Henderson heard the petitioner ask "What the fuck you following us for?" and seven or eight shots fired from the direction the petitioner had gone. *Id*. at 242. Henderson testified that he saw fire from the gun. According to Henderson, the petitioner returned to the car with the gun and said "I got him." *Id*. at 244. Smith testified that he heard about fifteen or twenty gunshots coming from the front of the building, and that when the petitioner returned to the car with the gun the petitioner said "I had to do him. I though he was reaching for something." Trial Tr., Sept. 22, 2005 at 34. Smith could smell smoke from the weapon. Turner testified that he saw the gun discharge and heard at least fifteen to twenty shots. According to Turner, when the petitioner returned to the car, he said "I shot him." Trial Tr., Sept. 22, 2005 at 113.

Mark Montgomery testified that on November 8, 2004, he resided at an apartment complex at 4535 Cadieux. At about 8:30 that evening, he was at home asleep and awoke to the sound of gunshots. Montgomery testified that he heard more than five gunshots, and that the last few shots sounded as though they were farther away. He looked out of the front window and observed a car leaving the building. He described the car as a dark-colored Chevrolet Lumina.

Smith and Turner testified that they did not contact the police because they were afraid of the petitioner. Henderson testified that on the day the petitioner was apprehended, the petitioner called Henderson and told him not to come around and that "the only way he could get off if Little Joe and 'Ced' come up dead." Trial Tr., Sept. 21, 2005 at 253. Turner testified that after the

incident, the petitioner told him that the petitioner would have to kill Smith and Henderson, because if he did not he would be locked up.

Gloria Chesternut testified that she resided with Greene at the apartment building at 4535 Cadieux. At about 8:30 p.m., she was awakened by Greene calling her name at the front door of their apartment. His upper body was soaked in blood. He told her that he was shot and asked her to drive him to the hospital. She called 911, and the police arrived. Detroit Police Officer Kenneth Bresinski testified that he and Officer Mark Estrada responded to the call, arriving at about 8:30 p.m. Outside the building, Bresinski observed broken glass, shell casings, and bullet holes in the building. Officer David Soli of the Detroit Police Department's Evidence Technician Unit testified that he recovered thirteen 7.62 x 39 shell casings from the area and testified that he observed bullet holes and blood spatter outside the apartment building. The parties stipulated that Detroit Police Officer Tonisha Bridgewater of the Firearms Unit compared the thirteen spent shell casings and determined that all were fired from the same weapon, they could have been fired from any weapon that could fire a .30 caliber bullet, and an AK-47 would be able to fire a .30 caliber bullet.

Sarah Manning testified that at 6:28 p.m. November 8, 2004, she received a call from Chauncey Greene. He gave her a license number, YZN-394, which she wrote down. The following afternoon, she learned that he had been killed. She was later contacted by the police and provided them with that license number. Jacqueline Greene, Chauncey Greene's mother, testified that two days after he died, she spoke with Sarah Manning regarding a license plate number, YZN-394, which she provided to Detective Dale Collins. Detroit Police Investigator Dale Collins testified that he located Smith's Lumina through a registration search for license number YZN-394. His investigation of the Lumina let him to Cedric Smith, who led him to Joseph Turner. He obtained

statements from both. After the Lumina was processed, both were reinterviewed, and Detective Collins obtained a warrant for the petitioner's arrest. He later received information which caused him to search for the petitioner in Canada. Collins was unable to locate Henderson until the month of trial, and had no personal contact with Watson.

Officer Christopher Dupuis of the Windsor Police Service testified that on June 13, 2005, he and constables Alicia Cheney, Robert Deluca, and Kathy Henry conducted surveillance of a home in Windsor. When the petitioner left the home, the officers followed him. Windsor Police Detective Tom Hartleib testified that he arrested the petitioner. According to Detective Hartlieb, the petitioner identified himself as Jeremy Burney. However, when Detective Hartlieb identified a distinctive tattoo on his abdomen, the petitioner identified himself as Terrance Hall. The parties stipulated to a portion of the petitioner's testimony before the Immigration and Refugee Board for Ontario, Canada in which the petitioner acknowledged that he was aware of a pending Michigan homicide arrest warrant against him.

The petitioner was convicted of first-degree premeditated murder, felon in possession of a firearm, and possession of a firearm during the commission of a felony, and sentenced to life imprisonment without the possibility of parole, a concurrent term of two to five years imprisonment, and a consecutive term of two years imprisonment. Following his convictions and sentencing, the petitioner filed a direct appeal in the Michigan Court of Appeals arguing that the prosecution presented insufficient evidence to support his first-degree murder conviction and that he was denied his right to a fair trial when the trial court failed to instruct the jury on the lesser offense of manslaughter. The court affirmed the petitioner's convictions. *People v. Hall*, No. 266087, 2007

WL 517540 (Mich. Ct. App. Feb. 20, 2007). The Michigan Supreme Court denied leave to appeal. *People v. Hall*, 478 Mich. 929, 732 N.W.2d 912 (2007).

The petitioner subsequently filed a motion for relief from judgment in the state trial court, arguing that his right to confront the witnesses against him was violated when the medical examiner was not called to testify, the trial court denied his right to present a defense when it refused to admit a written statement, and he received ineffective assistance of both trial and appellant counsel. The trial court denied the motion finding that the claims lacked merit. *People v. Hall*, No. 05-7357-FC (Wayne Cty Cir. Ct. Feb. 19, 2008). The petitioner's state court appeals were rejected. *People v. Hall*, No. 285605 (Mich. Ct. App. Oct. 21, 2008); *People v. Hall*, 483 Mich. 978, 764 N.W.2d 248 (2009).

> The petition for habeas corpus raises the following issues:
>
> I. The trial court abused its discretion when it would not allow counsel to cross-examination a witness about a letter written to the witness.
>
> II. [The petitioner] was denied his right to effective assistance of counsel when his attorney failed to conduct an adequate pre-trial investigation and fail[ed] to call three witnesses who could have provided exculpatory evidence as to a second suspect and provided an alibi to [the petitioner's] whereabouts.
>
> III. [The petitioner] was denied his right to effective assistance of appella[te] counsel when his attorney failed to raise and argue the above issues of merit on direct appeal.

Pet. at 2-3. The respondent filed an answer contesting the merits of the petitioner's claims and arguing that the petitioner's second and third claims were not presented properly in state court.

The Court does not find it necessary to address the question of procedural default. It is not a jurisdictional bar to review of the merits of an issue, *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005), and "federal courts are not required to address a procedural-default issue before deciding

against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir.2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). Application of a procedural bar would not affect the outcome of this case, and it is more efficient to proceed directly to the merits.

II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104–132, 110 Stat. 1214 (April 24, 1996), which govern this case, circumscribe the standard of review federal courts must apply when considering an application for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). As amended by AEDPA, 28 U.S.C. § 2254(d) permits a federal court to issue the writ only if the state court decision on a federal issue "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or it amounted to "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2); *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Under that review standard, mere error by the state court does not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (internal quotes omitted)). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409. The Court has explained that an unreasonable application of federal law is different from an incorrect application of federal law. Under that language, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. The Supreme Court has continued to emphasize the limited nature of this review. In its unanimous decision two terms ago in *Harrington v. Richter*, --- U.S. ---, 131 S. Ct. 770 (2011), the Court reiterated that the AEDPA requires federal habeas courts to review state court decisions with "deference and latitude," and "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* at 785-86 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Sixth Circuit observed recently that "[t]his is a very high standard, which the [Supreme] Court freely acknowledges." *Peak v. Webb*, 673 F.3d 465, 472 (6th Cir. 2012). The *Peak* court suggested that

*Richter* holds that the review standard "is even more constricted than AEDPA's plain language already suggests." *Ibid.*

The distinction between mere error and an objectively unreasonable application of Supreme Court precedent creates a substantially higher threshold for obtaining relief than *de novo* review. The AEDPA thus imposes a highly deferential standard for evaluating state court rulings, and demands that state court decisions be "given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, ---, 130 S. Ct. 1855, 1862 (2010) (finding that the state court's rapid declaration of a mistrial on grounds of jury deadlock was not unreasonable even where "the jury only deliberated for four hours, its notes were arguably ambiguous, the trial judge's initial question to the foreperson was imprecise, and the judge neither asked for elaboration of the foreperson's answers nor took any other measures to confirm the foreperson's prediction that a unanimous verdict would not be reached" (internal quotation marks and citations omitted)); *see also Peak*, 673 F.3d at 473-74; *Bray v. Andrews*, 640 F.3d 731, 737-39 (6th Cir. 2011); *Phillips v. Bradshaw*, 607 F.3d 199, 205 (6th Cir. 2010); *Murphy v. Ohio*, 551 F.3d 485, 493-94 (6th Cir. 2009); *Eady v. Morgan*, 515 F.3d 587, 594-95 (6th Cir. 2008); *Davis v. Coyle*, 475 F.3d 761, 766-67 (6th Cir. 2007); *King v. Bobby*, 433 F.3d 483, 489 (6th Cir. 2006); *Rockwell v. Yukins*, 341 F.3d 507, 511 (6th Cir. 2003) (en banc). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, --- U.S. ---, 131 S. Ct. 1388, 1398 (2011).

A.

The petitioner first asserts that he is entitled to habeas relief because the trial court erred by limiting defense counsel's cross-examination of the victim's mother, Jacqueline Greene, regarding a letter from her daughter, Shaquelean Greene, dated November 18, 2004. The petitioner asserts that

the letter identified another man as the person who shot the victim, and the trial court's ruling denied him the right to a meaningful opportunity to present a complete defense. The trial court, the only court to issue a decision on this issue, held that it was not an abuse of discretion to exclude the letter and to limit Jacqueline Greene's testimony about the letter because it was hearsay.

The Compulsory Process Clause of the Sixth Amendment provides an accused with the right to "compulsory process for obtaining witnesses in his favor," U.S. Const. amend. VI, a crucial part of the Constitution's more basic guarantee of "a meaningful opportunity to present a complete defense." *California v. Trombetta*, 467 U.S. 479, 485 (1984). As applied to the states by the Due Process Clause of the Fourteenth Amendment, the accused has the right at trial to present testimony that is "relevant," "material," and "vital to the defense." *Washington v. Texas*, 388 U.S. 14, 17 (1967); *see also Crane v. Kentucky*, 476 U.S. 683, 690 (1986) ("Whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" (internal citations omitted)). However, the "right to present relevant evidence is not unlimited" and "is subject to reasonable restrictions" imposed by the criminal process. *United States v. Scheffer*, 523 U.S. 303, 308 (1998) ("As a result, state and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials. Such rules do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.' Moreover, we have found the exclusion of evidence to be unconstitutionally arbitrary or disproportionate only where it has infringed upon a weighty interest of the accused." (internal citations omitted)).

A violation of the fundamental right to present a defense is not established merely by showing that the trial court excluded evidence relevant to a defense. Rather, a petitioner must show that the exclusion of evidence "significantly undermined fundamental elements of the defendant's defense." *Scheffer*, 523 U.S. at 315. Put another way, the exclusion of evidence is unconstitutionally arbitrary or disproportionate "only where it has infringed upon a weighty interest of the accused." *Id.* at 308 (citing *Rock v. Arkansas*, 483 U.S. 44, 58 (1987)). Applying this standard in a habeas corpus case, the Sixth Circuit has held that the right to present a defense is abridged by an evidentiary ruling excluding defense evidence "[o]nly if 'an evidentiary ruling is so egregious that it results in denial of fundamental fairness.'" *Baze v. Parker*, 371 F.3d 310, 324 (6th Cir. 2004) (quoting *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003)); *accord Alley v. Bell*, 307 F.3d 380, 394-95 (6th Cir. 2002) (finding that exclusion of evidence unconstitutional only when it eviscerates a defense). Therefore, even if exclusion of evidence was erroneous under state law, the constitutional right to present a defense is not abridged unless the evidence was so material that it deprived the defendant of a fair trial. *Allen v. Howes*, 599 F. Supp. 2d 857, 872 (E.D. Mich.2009).

The record in this case indicates that the petitioner was given sufficient opportunity to question the victim's mother and other witnesses at trial. The trial court allowed defense counsel to ask the victim's mother several questions about what was apparently the contents of a letter written by her daughter, the victim's sister, and only sustained an objection to a question about whether the victim was a drug dealer. The parties acknowledged that the letter itself was hearsay and defense counsel did not move to admit the letter. Defense counsel was not precluded from calling the victim's sister or other witnesses who may have been able to provide testimony in support of the petitioner's theory of the case.

Moreover, although the petitioner asserts that the letter written by the victim's sister would point to another person as the shooter, he has not provided the Court with that letter nor offered a witness affidavit or other evidence in support of his claim. It is well-established that conclusory allegations, without evidentiary support, do not provide a basis for habeas relief. *See Cross v. Stovall*, 238 F. App'x 32, 39-40 (6th Cir. 2007); *Prince v. Straub*, 78 F. App'x 440, 442 (6th Cir. 2003); *Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998) (conclusory allegations of ineffective assistance of counsel do not justify federal habeas relief); *see also Washington v. Renico*, 455 F.3d 722, 733 (6th Cir. 2006) (bald assertions and conclusory allegations do not provide a sufficient basis for an evidentiary hearing in habeas proceedings). There is no also indication in the record that the victim's sister witnessed the shooting. Consequently, any information contained in the sister's letter would not have been based on personal knowledge. The letter itself likely would have been hearsay. Although the Supreme Court has held that the State's interest in prohibiting introduction of hearsay generally must yield to the defendant's due process interest when sufficient indicia of reliability suggest that the statements actually were made,  see *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973), such indicia of reliability are absent here. Even accepting as true that the victim's sister actually made the statement that someone other than the petitioner shot Chauncey Greene, there is no evidence that the sister had personal knowledge of that fact and no evidence indicating that the sister's source of information was reliable. The Court cannot say that the exclusion of this evidence was arbitrary or disproportionate to the purpose of the state evidence rule intended to ensure that testimony presented at trial is reliable. The petitioner has failed to demonstrate that the trial court's rulings on the questioning of the victim's mother violated his constitutional rights. Habeas relief is not warranted on the petitioner's claim.

B.

The petitioner next asserts that he is entitled to a writ of habeas corpus because trial counsel was ineffective by failing adequately to investigate his case and call witnesses whom he believes would have provided exculpatory testimony. The trial court, the only Michigan court to issue a decision on this matter, held that trial counsel's decision not to call particular witnesses constituted strategic decisions rather than ineffective assistance.

The two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), governs the Court's analysis of ineffective-assistance-of-counsel claims. *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). To establish ineffective assistance of counsel "a defendant must show both deficient performance and prejudice." *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009); *see also Premo v. Moore*, --- U.S. ---, ---, 131 S.Ct. 733, 739 (2011) (same).

Because of the high deference accorded state court determinations by the AEDPA, establishing that counsel was ineffective, and therefore the petitioner was denied his right to counsel under the Sixth Amendment, is difficult. "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, ---, 130 S.Ct. 1473, 1485 (2010). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S. at 690.

> Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The Strickland standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

*Harrington*, 131 S.Ct. at 788 (internal citations omitted).

On habeas review, "[t]he question 'is not whether a federal court believes the state court's determination' under the Strickland standard 'was incorrect but whether that determination was unreasonable — a substantially higher threshold.'" *Knowles*, 556 U.S. at 123 (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). Moreover, "because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Ibid.* (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Defense counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691; *see also Wiggins*, 539 U.S. at 524-29 (holding that the abandonment of an investigation at an unreasonable juncture may prevent counsel from making an informed strategic decision); *Towns*, 395 F.3d at 258. This duty includes an obligation to investigate all witnesses who may have information concerning a defendant's guilt or innocence. *Towns*, 395 F.3d at 258. However, the petitioner also must overcome the obvious rejoinder that trial counsel's decisions on what evidence to present and whom to call to the witness stand must be relegated to trial strategy. In *Strickland*, the Supreme Court held that

> strategic choices made after a thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after a less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Strickland*, 466 U.S. at 690-91; *see also Brown v. Smith*, 551 F.3d 424, 430 (6th Cir. 2008). Decisions as to what evidence to present and whether to call certain witnesses are generally presumed to be a matter of trial strategy, although such decisions must be reasonable. *See Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000). The failure to call witnesses or present other evidence may constitute ineffective assistance of counsel only when it deprives a defendant of a substantial defense. *See Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002).

In this case, the petitioner has failed to establish that trial counsel erred or that the petitioner was prejudiced by counsel's conduct. The petitioner first asserts that trial counsel should have sought to admit the letter prepared by the victim's sister, Shaquelean Greene. That document, however, clearly was inadmissible hearsay under state law. *See* Mich. R. Evid. 801(c). Defense counsel cannot be deemed ineffective for failing to make a futile objection or motion. *See United States v. Steverson*, 230 F.3d 221, 225 (6th Cir. 2000).

The petitioner next asserts that trial counsel should have further investigated or called Shaquelean Greene, Felicia, Billy Joe, and his brother Andre Watson as witnesses. The petitioner, however, has failed to present any evidence to show that Greene, Felicia, or Billy Joe were willing and available to testify at trial or that their testimony would have been favorable to the petitioner. As noted, conclusory allegations without evidentiary support do not provide a basis for habeas relief. *See Cross*, 238 F. App'x at 39-40; *Prince*, 78 F. App'x at 442; *Workman*, 178 F.3d at 771; *see also Washington*, 455 F.3d at 733. The record does contain an affidavit from Andre Watson dated September 21, 2007 and submitted with the petitioner's motion for relief from judgment. However, that affidavit merely indicates that Watson called the petitioner's wife's house at 8:20 p.m. on the night of the shooting and the petitioner's wife told him that the petitioner was in the bathtub; that

when he went to the petitioner's house at 10:00 p.m. the petitioner was asleep; and that around 10:00 p.m. he encountered Turner, Smith, and Henderson, who told him that they had been involved in a shooting but not who had actually done the shooting. Watson's affidavit thus only provides hearsay testimony regarding the petitioner's whereabouts at the time of the shooting. Watson's affidavit is also suspect given that it is from a family member and was signed two years after trial.

The record reveals that trial counsel was aware of these potential witnesses at the time of trial and elected not to call them. The petitioner has failed to demonstrate that counsel's decision not to call these witnesses was anything but a strategic choice. Moreover, the prosecution presented significant evidence of the petitioner's guilt at trial. Delorean Henderson, Joseph Turner, and Cedric Smith testified that they were in the car with the petitioner at the time of the shooting, that they saw him exit the car with an AK-47 and confront the victim, and that they heard multiple gunshots. Mark Montgomery saw a dark green Lumina near the scene and Sarah Manning provided the police with the license plate number given to her by the victim, which was linked to Smith's mother's dark green Lumina. The petitioner fled the country, gave a false name to Canadian authorities when apprehended, and admitted that he was wanted for the shooting. In light of the significant evidence implicating the petitioner in the shooting and the lack of evidence that the four individuals named by the petitioner could provide exculpatory evidence, the petitioner has also failed to demonstrate that he was prejudiced by counsel's failure to call those witnesses. Habeas relief is not warranted on this claim.

C.

Lastly, the petitioner asserts that he is entitled to habeas relief because appellate counsel was ineffective by failing to raise the foregoing issues on direct appeal. The trial court concluded that

appellate counsel was not ineffective because those claims lacked merit and therefore the petitioner was not prejudiced by appellate counsel's decision not to raise them.

The right to the effective assistance of counsel includes the right to the effective assistance of appellate counsel. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). To prevail on a claim of ineffective assistance of appellate counsel, the petitioner must demonstrate that appellate counsel's performance was deficient and that the deficient performance prejudiced the appeal. *Strickland*, 466 U.S. at 687.

The Supreme Court has made clear that a criminal defendant has no constitutional right to demand that appellate counsel raise every possible colorable issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones*, 463 U.S. at 751-52). Appellate counsel thus need not raise every nonfrivolous issue, but he or she must exercise reasonable professional judgment. *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003) (citing *Jones*, 463 U.S. at 751-53).

A petitioner is prejudiced by appellate counsel's deficient performance if a reasonable probability exists that, but for counsel's deficient performance, he would have prevailed on appeal. *See Riley v. Jones*, 476 F. Supp. 2d 696, 709 (E.D. Mich. 2007); *see also Meade v. Lavigne*, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003) (appellate counsel may prejudice a defendant by omitting a "dead-bang winner," an issue obvious from the trial record which would have resulted in reversal on appeal).

The petitioner has failed to show that by omitting the claims presented in his motion for relief from judgment appellate counsel's performance fell outside the wide range of professionally competent assistance. Appellate counsel presented insufficient evidence and jury instruction claims on direct appeal. The petitioner has not shown that appellate counsel's strategy in presenting such claims and not raising the claims contained in the motion for relief from judgment was deficient or unreasonable. Moreover, because the Court's has determined that the foregoing claims lack merit, the petitioner cannot establish that he was prejudiced by appellate counsel's performance. "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit,'" and there is no reasonable probability that, but for appellate counsel's failure to raise the claims, the petitioner would have prevailed on appeal. *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)). The petitioner has failed to establish that appellate counsel was ineffective, and the state court's adjudication of the petitioner's claim was not contrary to or an unreasonable application of *Strickland*. Habeas relief is not warranted on this claim.

### III.

The state courts' decisions in this case were not contrary to federal law, an unreasonable interpretation of federal law, or an unreasonable determination of the facts of the case. The petitioner has not established that he is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: March 14, 2013

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 14, 2013.

s/Deborah R. Tofil
DEBORAH R. TOFIL